# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-01994-SCT

*MICHAEL BENARD MILLER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2007 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/11/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Michael Benard Miller was indicted for the aggravated assault of Fatasha Runnels. Following a jury trial in the Circuit Court of Scott County, Mississippi, Miller was found guilty and sentenced to twelve years in the custody of the Mississippi Department of Corrections ("MDOC").  After the denial of his "Motion for New Trial," Miller filed notice of appeal.

## FACTS

¶2.     According to Runnels, she and Miller began dating on December 24, 2006.  In February 2007, Runnels informed Miller of her desire to break up, as she wished to get back

together with the father of her two children, Deon Ratliff.[1]  On February 18, 2007, Miller visited Runnels's trailer, where she lived with her children and her mentally handicapped sister, Susie Brown, arriving at approximately 5:30 or 6:00 p.m.  Runnels testified that "we went in my room, and we talked, and . . . he was just asking why I wanted to break up and go back with . . . [Ratliff]."  After arguing "for a little while[,]" Runnels stated that she informed Miller that she was going to watch "Desperate Housewives" with Brown.

¶3.    Brown testified that she heard Runnels and Miller arguing in Runnels's bedroom. During the television program, Brown testified that Runnels and Miller "got in a[n] argument again, and she told him to leave her alone, leave."  According to Brown, when Miller refused to leave, Runnels "walk[ed] out the door, went and put her clothes in the dryer."  Brown further testified that "when [Runnels] left out walking out there, [Miller] got up and left outside."

¶4.    Behind the trailer, in the shed where her washer and dryer were located, Runnels testified that Miller:

> asked me why did I want to go back to . . . [Ratliff], and I told him just to leave.  And he grabbed me by my neck and pushed me against my shed door, and I told him to leave, and he apologized.  He said he was sorry for grabbing me by my neck.  I told him to leave again, and he asked for the cell phone he had bought me a couple weeks earlier, so I gave it to him.  And . . . he took the phone, and he broke it.

According to Runnels, "I told him to leave again, and the next thing I knew, . . . he had me by my throat again.  And . . . next thing I remember . . . I was on my stomach."  After Miller forcefully stuck his fingers in her nose and mouth, Runnels testified that she bit him, and she

---

[1]At the time, Ratliff had been in prison for more than a year.  According to Runnels, Ratliff was released from prison in July 2007.

then "started getting beat in the head with something." She "tried to act like [she] was dying so he would leave[,]" and as she "was laying there . . . heard something fall to the ground, and then [she] . . . heard him walking, and [she] heard his truck crank up, and [she] heard him leave really fast." With her head feeling "very heavy," Runnels then crawled to her trailer and attempted to get Brown's attention. Several minutes later, Brown testified that she "opened the . . . screen door, [Runnels] was laying there covered up with blood over her head, all over her head and her hands, too." When paramedic Ree Alford arrived at the scene, she testified that "[b]lood was everywhere." According to Alford, Runnels:

> had a deep laceration . . . above her right eye. . . . [S]he had like a golf-ball size laceration . . . deep tissue laceration . . . to her forehead. She had open skull fracture . . . in the back of her head . . . where we could see . . . skull fragments as well as tissue. . . . [H]er right middle finger was deformed. . . . I assumed it was fractures of the face just because of the swelling. . . . [A]nd there was pieces of white plastic parts in her hair . . . .

Remaining conscious, Runnels informed Deputy Sheriff Joe McDougal of the Scott County Sheriff's Department that Miller had assaulted her. Based upon what Alford described as "[v]ery extensive trauma[,]" Runnels was initially brought to Scott Regional Hospital, then transported by ambulance to the University of Mississippi Medical Center in Jackson, Mississippi. The following morning, Investigator Steve Crotwell of the Scott County Sheriff's Department found a broken box fan behind Runnels' shed. According to Crotwell, "the buttons and all that [were] broke out of it." Runnels remained hospitalized for four or five days.

3

¶5.    Miller, however, denied injuring Runnels.[2]    Miller testified that he arrived at Runnels's trailer around 4:00 p.m., then left "about like 4:30."  According to Miller:

> I was sitting in [my] truck, and [Runnels] was standing outside the truck, and [Brown] was holding the baby on the step, because [Runnels] was fixing to go back to church, because [Brown] asked me would I bring her a Dr. Pepper drink.  I said, well, I'm not coming back out here.

Prior to leaving, Miller testified that "[w]e had no fight, because [Runnels] said she was going back to church, and I said, well, I'm fixing to go home."  According to Miller, he then "went home, and that's where I remained."  Miller's mother and father both testified that he returned home at approximately 5:00 p.m., and remained there until briefly leaving for ten or fifteen minutes around 9:00 p.m.

¶6.    On July 31, 2007, Miller was indicted for aggravated assault.[3]  On October 10, 2007, the jury trial commenced.  On cross-examination, Crotwell testified that Miller was beat up "several days" after being jailed.  According to Crotwell, Ratliff was a prisoner at the Scott County Sheriff's Department at the time of this incident, but had been "separated intentionally" from Miller.[4]  As such, Ratliff was not among the individuals convicted in conjunction therewith.

---

[2]Miller testified that he and Runnels "was [sic] friends.  It wasn't no relationship.  We was good close friends."

[3]The indictment provided that Miller "did willfully, unlawfully, feloniously, purposely and knowingly cause serious bodily injury to [Runnels] . . . under circumstances manifesting extreme indifference to the value of human life, by beating [Runnels] about the head and face, contrary to and in violation of Section 97-3-7(2)(a) . . . ."

[4]While hospitalized, Runnels testified that she had spoken with Ratliff and "[h]e told me that . . . he seen them bring [Miller] in, and [Miller] told him he didn't do it."

4

¶7.	After the State rested, Miller's motion for directed verdict was overruled by the circuit court. Thereafter, on direct examination, Miller testified that he was jumped "by four guys" in jail. Apparently seeking to add another arrow to the quiver of his defense, Miller attempted to insinuate that the fracas at the jail somehow involved Ratliff and was interrelated with the aggravated assault of Runnels.[5] The State objected, stating "[i]t doesn't have any relevance to this case." The circuit judge sustained that objection. Counsel for Miller then made a proffer as to the relevance of the testimony, outside the hearing of the court reporter and jury. The circuit judge subsequently ruled that "[t]he objection's sustained as to relevance." Thereafter, the jury found Miller guilty as charged and the "Judgment" of the circuit court sentenced him "to serve a term of twelve (12) years in the custody of the [MDOC]." On November 2, 2007, Miller filed a "Motion for New Trial,"[6] which was overruled by the circuit court. Miller then filed timely notice of appeal.

---

[5]Runnels had testified that she previously "got a letter in my mailbox, supposed to be from somebody named Missy that I've never heard of . . . telling me that she knew where I lived, that she was pregnant with [Ratliff's] baby, . . . that I should stay with [Miller] or I was going to get my butt whipped." According to Miller, Runnels had previously informed him about this letter. Furthermore, Runnels and Miller both testified to previously seeing unfamiliar vehicles stop in Runnels's driveway, before leaving. Miller also testified to a prior instance in which "I took [Runnels] to the store, and [the SUV] drove right behind my car, went off the road, and it turned around, went back down the road." From this collective testimony, Miller attempted to imply an alternative, unknown assailant in the subject incident.

[6]Miller's "Motion for New Trial" provided, in pertinent part, that "[t]he [c]ourt erred in sustaining every objection made by the State and overruling every objection made by [Miller]."

**ISSUE**

¶8.　This Court will consider:

Whether the circuit court abused its discretion in sustaining the State's relevancy objection.

**ANALYSIS**

¶9.　Miller argues that "[i]f one party's witness testifies about a topic, even on cross-examination, the door is thereby opened for the other party to introduce evidence on the same topic over a relevancy objection." In conjunction with "the general rule . . . to permit introduction of as much evidence as possible over relevancy objection[,]" Miller asserts that the State's failure to object to Crotwell's cross-examination testimony on the jail assault "opened the door" to Miller's testimony "on the same subject, even though both were elicited by defense counsel."

¶10.　The State responds that Miller waived this issue, in that "[t]he record reflects that when given an opportunity to object to the trial court's ruling on grounds being argued on appeal, neither Miller or his counsel did so.[7] . . . [Also,] [t]his jail assault was not mentioned in Miller's motion for a new trial."[8] Addressing the merits, the State asserts that "the record reflects no grounds for indicating the relevance of this testimony." Specifically, "the record reflects that Miller did not meet his burden of proof for showing the relevance of any additional testimony about the circumstances involved in the assault upon Miller which

---

[7]According to the State, "[t]he record reflects that Miller did not include any proffer in the record as to how this testimony would have been relevant."

[8]Miller responds to the State's waiver argument, stating that "[t]o require objections to adverse rulings to objections to preserve an issue for appeal would logically require infinite numbers of objections, a[n] absurd result."

6

occurred after his assault upon [Runnels]." The State adds that the circuit court's ruling "did not prevent Miller's counsel from arguing during closing argument by innuendo that Ratliff was somehow responsible for the assault upon [Runnels]."

¶11. Regarding waiver, this Court notes that the record reflects a proffer by counsel for Miller regarding the relevance of Miller's testimony on the jail assault. Thereafter, the circuit judge sustained the State's objection. Moreover, Miller's "Motion for New Trial" generally alluded to error by the circuit court in sustaining each objection of the State. As such, this Court concludes that Miller did not waive consideration of this issue. However, consideration of its merits, i.e., whether the circuit court abused its discretion in sustaining the State's relevancy objection, is complicated by the fact that the substance of the subject proffer was made outside the hearing of the court reporter. Therefore, the record is devoid of support for Miller's relevancy argument.

¶12. "This Court's standard of review when considering a trial judge's admission or exclusion of evidence is . . . one of *abuse of discretion*." **Pierce v. Cook**, 2008 Miss. LEXIS 398, at *17 (Miss. August 14, 2008) (citing **Whitten v. Cox**, 799 So. 2d 1, 13 (Miss. 2000)) (emphasis added). Mississippi Rule of Evidence 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. Mississippi Rule of Evidence 402 states, in part, that "*[e]vidence which is not relevant is not admissible*." Miss. R. Evid. 402 (emphasis added). The circuit court failed to make a relevancy connection between the jail assault of Miller and the aggravated assault of Runnels, for which Miller was indicted. These were separate

7

incidents, disconnected both temporally and by location. Miller asserts that "[w]hether it was relevant or not, the door had certainly been opened and the testimony was admissible." However, irrelevant evidence is not admissible. *See* Miss. R. Evid. 402. Therefore, this Court cannot conclude that the circuit judge abused his discretion in sustaining the State's relevancy objection.[9] Additionally, the testimony of Runnels alone provided "credible evidence . . . from which the jury could have found or reasonably inferred each element of the offense charged." ***Mamon v. State***, 724 So. 2d 878, 881 (Miss. 1998) (citing ***Davis v. State***, 586 So. 2d 817, 819 (Miss. 1991)). *See also* ***Cousar v. State***, 855 So. 2d 993, 998-99 (Miss. 2003) ("this Court has stated that a single witness's uncorroborated testimony is sufficient to support a conviction."). Accordingly, this Court finds that this issue is without merit.

## CONCLUSION

¶13.    This Court affirms the "Judgment" of the Circuit Court of Scott County finding Miller guilty of aggravated assault and the sentence of twelve years in the custody of the MDOC.

¶14.    **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWELVE (12) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND LAMAR, JJ., CONCUR.**

---

[9]This Court would add that even if the circuit judge did err because the door had been opened, this error was harmless given the relevancy disconnect between the jail assault and the aggravated assault of Runnels.